**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| DAVID CORNWALL, § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:04-CV-797-Y |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.  STATEMENT OF THE CASE

Plaintiff David Cornwall brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Cornwall applied for SSI benefits on February 19, 2002 (protective filing date) and disability insurance benefits on February 22, 2002, and alleges that he has been disabled since October 22, 2001. (Tr. 259). Cornwall meets the requirements for disability insured status through at least 2006. (Tr. 233).

After the Social Security Administration denied his applications for benefits initially and on reconsideration, Cornwall requested a hearing before an administrative law judge (the "ALJ"), and ALJ J. Frederick Gatzke held a hearing on December 6, 2002 in Fort Worth, Texas. (Tr. 257-88). Cornwall was represented by counsel. On February 27, 2003, the ALJ issued a decision that Cornwall was not disabled and was not entitled to disability insurance or SSI benefits because he retained the ability to perform his past relevant work. (Tr. 13-18). The Appeals Council denied Cornwall's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B.  STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is severe if it has more than minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or

combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence

is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.   ISSUES

Whether substantial evidence supports the ALJ's determination at Step Four of the sequential evaluation process that Cornwall could perform his past relevant work.

D.   ADMINISTRATIVE RECORD

1.   Treatment History

Cornwall was hospitalized in June 2001 for atrial fibrillation[1] and rapid ventricular response as confirmed by an electrocardiogram (ECG). (Tr. 145, 148). He was seen on an outpatient basis in July and August to monitor his condition. (Tr. 141-47).

Cornwall was hospitalized on October 22, 2001 with complaints of increased heart palpitations and fatigue. (Tr. 216). His admitting diagnoses included atrial fibrillation, hypertension, and hypercholesterolemia.[2] After direct current cardioversion[3] was administered and proved unsuccessful, Cornwall underwent implantation of a pacemaker on October 26, 2001. (Tr. 102-39, 214). Cornwall developed gastrointestinal bleeding after being placed on Coumadin, and

---

[1] Atrial fibrillation is an arrhythmia in which minute areas of the atrial myocardium are in various uncoordinated stages of depolarization and repolarization due to multiple reentry circuits within the atrial myocardium; instead of intermittently contracting, the atria quiver continuously in a chaotic pattern, causing a totally irregular, often rapid ventricular rate. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 670 (29th ed. 2000).

[2] Hypercholesterolemia is an excess of cholesterol in the blood. *Id.* at 849.

[3] Cardioversion is a procedure to restore normal heart rhythm by administering electrical shock. *Id.* at 288.

underwent a colonoscopy and esophogastroduodenoscopy to locate the source of the bleeding. (Tr. 115, 133). Cornwall was discharged on November 2, 2001 with diagnoses of chronic atrial fibrillation, status post pacemaker, and gastrointestinal bleeding. (Tr. 103, 213-15).

Cornwall was seen on an outpatient basis on November 13, 2001 for complaints of fatigue and soreness at the pacemaker site. (Tr. 98). During a follow-up visit at the cardiology clinic on December 10, 2001, Cornwall reported left-sided chest pain. (Tr. 96). Examining physician Rim Bannout, M.D., reported that Cornwall denied having palpitations, was doing well, and had inquired about returning to work. (Tr. 211). Cornwall's blood pressure remained elevated. (Tr. 212). Cornwall returned the following week with complaints of fatigue and sluggishness. (Tr. 94).

During a check-up with physician Robert Capper, M.D., on February 11, 2002, Cornwall was found to be asymptomatic with a well-healed pacemaker site. His blood pressure was 132/90 with an irregular pulse. (Tr. 210). Capper diagnosed heart disease of unknown etiology, probably mixed with hypertensive cardiovascular disease; possible asymptomatic ischemic heart disease[4] complicated by atrial fibrillation and a permanent pacemaker. (Tr. 210).

On April 1, 2002, Cornwall complained of pain in his right leg that was worse with walking and relieved by rest. He denied experiencing any numbness or muscle weakness. (Tr. 88). His blood pressure was recorded as 130/100. Cornwall was diagnosed with chronic atrial fibrillation, a permanent pacemaker, congestive heart failure, and leg pain with a recommendation that peripheral vascular disease be ruled out. (Tr. 88). A vascular Doppler imaging report dated April

---

[4] Ischemic heart disease refers to any of a group of acute or chronic cardiac disabilities resulting from insufficient supply of oxygenated blood to the heart. *Id*. at 518.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 5**

24, 2002 found no evidence of deep vein thrombosis in either lower extremity. (Tr. 171).

Cornwall returned to the clinic on April 30, 2002 because he was experiencing chronic leg cramps and pain. (Tr. 86). His blood pressure was 150/90, his height was 5'11", and he weighed 260 pounds. His physician diagnosed chronic atrial fibrillation and leg pain secondary to vasculitis[5] versus peripheral vascular disease. (Tr. 86).

In June 2002, Cornwall complained that his blood pressure was fluctuating because of his back and leg pain. His blood pressure reading was 144/100. (Tr. 82). Cornwall continued to complain of low back pain and cramps in his legs during a check-up in July. He was given pain medication, and lumbar spine x-rays were ordered. (Tr. 80).

On August 23, 2002, Cornwall's physicians ordered follow-up testing after Cornwall reportedly had an abnormal lumbar spine series. (Tr. 227). A computed tomography (CT) scan was performed October 3, 2002, and showed a diffuse disc bulge at L3-L4 with mild stenosis; a vacuum disc phenomenon[6] at L4-L5 with prominent osteophytes and broad-based disc herniation with facet joint hypertrophy[7] that caused significant stenosis; and a broad-based disc protrusion at L5-S1. (Tr. 225).

Cornwall was seen on October 22, 2002 for complaints of numbness in both hands, dizziness possibly due to low blood pressure, and pain in his neck, back and right foot. (Tr. 222). His

---

[5] Vasculitis refers to inflammation of a blood or lymph vessel. *Id*. at 1935.

[6] A vacuum disc is a disc with imaging characteristics suggestive of gas in the center of the disc space, usually a manifestation of disc degeneration. American Journal of Neuroradiology, Nomenclature and Classification of Lumbar Disc Pathology (2001), http://www.asnr.org/spine__nomenclature/glossary.shtml.

[7] Hypertrophy is an enlargement or overgrowth of an organ or part due to an increase in size of the constituent cells. *Id*. at 859.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 6**

hypertension and atrial fibrillation were noted to be controlled, and his congestive heart failure was assessed as stable. Additional diagnoses included chronic low back pain and degenerative joint disease of the cervical and lumbar spine. (Tr. 222). He was given a referral to the orthopedic department for assessment of his degenerative joint disease, and physical therapy was ordered to address his low back pain. (Tr. 222).

Cornwall reported bilateral numbness and weakness in his arms during a follow-up visit on November 18, 2002. (Tr. 221). His blood pressure was recorded as 158/90 with an irregular heart rate. An electromyogram of his upper extremities was ordered, but no test results are in the administrative record. X-rays of his foot and a CT scan of his neck were also ordered, but subsequently cancelled with a notation that the tests were not warranted. (Tr. 221). Cornwall was instructed to attend physical therapy and exercise. (Tr. 221).

2.  Administrative Hearing

Born February 21, 1946, Cornwall was fifty-six years old on the date of the administrative hearing. (Tr. 260). He completed high school and his most recent job was delivering automobile parts. (Tr. 261). He stopped working because he needed surgery, and testified that he had been consistently ill since having his pacemaker implanted. (Tr. 261).

Cornwall testified that he felt lethargic from his medications, and walking to the bathroom left him short of breath. (Tr. 263). He testified that he was scheduled to see an orthopedic surgeon in February for evaluation of his back problems and leg cramps. (Tr. 264-65).

Cornwall also testified that he experienced numbness in his hands that made it difficult to write or hold a cup. He also testified that he is dizzy at times, which impairs his ability to drive.

**Findings, Conclusions and Recommendation of  
the United States Magistrate Judge–Page 7**

(Tr. 271). He testified that he has difficulty sleeping, and he has daily episodes of a rapid heart beat that last five to ten minutes until he calms down. (Tr. 270). Cornwall complained of chronic pain in his right foot, and he described his back pain as excruciating, although medication would numb the area. (Tr. 268). Cornwall testified that degenerative spinal changes limit his ability to stand, sit for prolonged periods, or bend over. Sitting more than ten or fifteen minutes causes a backache. (Tr. 277). Cornwall complained of the recent onset of problems with his concentration and memory as well. (Tr. 271).

Cornwall testified that, in addition to delivering automobile parts, he has work experience as a telemarketer and a truck dispatcher. He testified that the telemarketing job was a stressful, high-pressure job. (Tr. 273). He testified that dispatching was also a high-pressure job with constant activity. (Tr. 274). Cornwall also testified that he did not think he could deal with people on a regular basis. (Tr. 276). Cornwall no longer participated in social activities, nor did he help his wife with house work or yard work. (Tr. 277). He had asked one of his cardiologists if he could expect to return to work, but was told to discuss the issue with his primary doctor. (Tr. 281-83).

Vocational expert Shelly Eike also testified. She classified the job of auto parts delivery person as semiskilled work requiring heavy exertion. Work as a telemarketer is considered semiskilled, sedentary work, and work as a dispatcher is also semiskilled, sedentary work activity. (Tr. 286). In response to the ALJ's questions, Eike testified that a telemarketing job could be considered stressful due to quota requirements, and the dispatching job could be stressful because it required problem-solving skills and judgment. (Tr. 286). Eike noted that all of Cornwall's previous work had required dealing with people on a frequent or constant basis. (Tr. 287).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

3. ALJ Decision

The ALJ found that Cornwall had not engaged in substantial gainful activity since October 22, 2001 and suffered from severe impairments that included arrhythmia, status post pacemaker, a history of hypertension and cardiomegaly, degenerative disc disease, and obesity. (Tr. 17). The ALJ found that none of Cornwall's impairments or combination of impairments met or equaled the severity of any listed impairment. (Tr. 17). Instead, the ALJ found that Cornwall retained the residual functional capacity for a full range of sedentary work activity[8] with no nonexertional limitations. The ALJ further found that Cornwall's previous work as a telemarketer and dispatcher did not require job duties exceeding Cornwall's residual functional capacity. Accordingly, the ALJ found Cornwall was not disabled at Step Four of the sequential evaluation process because he was capable of returning to his past relevant work. (Tr. 17-18).

D. DISCUSSION

Cornwall asserts that the determination that he can perform his past relevant work as a telemarketer and dispatcher is unsupported by substantial evidence. Cornwall asserts that the ALJ assessed a residual functional capacity that omits Cornwall's nonexertional impairments, including his inability to handle stress, impaired use of his upper extremities, and his need for a sit/stand option to accommodate his back problems. Cornwall contends that the ALJ intentionally omitted these limitations after learning that these limitations would prevent Cornwall from returning to his

---

[8] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. 20 C.F.R. §§404.1567(a), 416.967(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.R. §§404.1567(a), 416.967(a).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 9**

previous work.

Cornwall contends that he requires a low-stress environment due to his cardiac impairments. For support, Cornwall relies on reference sources not found in the administrative record that address the relationship between atrial fibrillation and exposure to stress. (Plf. Br. at 7-8). But no evidence in the record before the ALJ demonstrates that Cornwall's particular circumstances warranted a vocational limitation to avoid stress. Contrary to Cornwall's testimony during the hearing, his physicians noted improvement in his cardiac condition after he was given a pacemaker. At various points in Cornwall's progress notes, his physicians described his condition as stable, asymptomatic, and controlled. No physician or other acceptable medical source has opined that Cornwall must be limited to a low-stress environment.[9]

Cornwall also testified about restrictions in his ability to use his upper extremities and an inability to sit for lengthy periods. He asserts that the ALJ erred in finding that his subjective complaints were exaggerated because there were diagnostic tests that established degenerative changes in his cervical and lumbar spine.

The ALJ reviewed the results of the various diagnostic tests contained in the record. However, the ALJ noted no objective signs of an incapacitating orthopedic impairment, such as muscle atrophy or grossly abnormal neurological deficits. (Tr. 16). He also found no indication of intractable pain, such as weight changes, guarding, premature aging, or lifestyle adaptations to

---

[9] One of Cornwall's physicians completed an insurance form in June 2002 on Cornwall's behalf and stated that Cornwall was disabled, (Tr. 229); however, the ALJ found that the boilerplate form was not completed for medical purposes and was a conclusory statement of disability that did not quantify Cornwal's actual functional capabilities. (Tr. 15). *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). The ALJ identified good reasons for discounting the value of this statement. *See generally* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 10**

accommodate the types of restrictions Cornwall described. (Tr. 16). In addition, the ALJ noted that Cornwall had completed disability forms earlier in the application process and related having no difficulty sitting. (Tr. 14). The ALJ agreed that Cornwall had some pain and discomfort, but not to the debilitating degree alleged. Instead, the ALJ found that Cornwall's complaints could be accommodated by limiting him to sedentary work.[10] Cornwall fails to demonstrate a lack of substantial evidence to support the ALJ's residual functional capacity assessment.

Cornwall also complains that the ALJ failed to ask any hypothetical questions of the vocational expert, and asserts that he was given no opportunity to correct deficiencies in the ALJ's questions and ask his own follow-up questions. The ALJ asked the vocational expert about particular aspects of Cornwall's previous work, but did not submit a formal question incorporating Cornwall's age, education, work experience and residual functional capacity.

In deciding whether a claimant can return to her past relevant work, an ALJ must make findings of fact regarding the claimant's remaining residual functional capacity (RFC) and the physical and mental demands of past relevant work, then the ALJ must compare the two. *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994). SOCIAL SECURITY RULING 82-62. Social Security Ruling 82-62 considers the claimant to be the primary source for vocational documentation of past work, and the claimant's statements are generally considered sufficient for determining skill level, exertional demands, and nonexertional demands of past work. Ruling 82-62 also contemplates acquiring supplementary or corroborative information from other sources, such as employers or the

---

[10] The state agency medical consultants who evaluated Cornwall's disability applications initially and on reconsideration opined that he could perform light or medium work activity and imposed no additional work-related restrictions. (Tr. 63-78).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 11**

DOT, regarding the requirements of the work as generally performed nationwide. SOCIAL SECURITY RULING 82-62. For situations where available documentation and vocational resource materials are insufficient to determine how a particular job is usually performed, it may be necessary to obtain the services of a vocational expert. SOCIAL SECURITY RULING 82-61. The ALJ has a duty to sufficiently develop the record, but the claimant has the burden at Step Four to prove an inability to perform past relevant work. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).

In accordance with the administrative regulations and rulings, the ALJ asked the vocational expert questions to clarify the skill and exertional levels of Cornwall's previous work, as well as expected mental demands. Cornwall has not cited any authority that would require the ALJ to present a more formal hypothetical question to the vocational expert. In addition, Cornwall was given the opportunity and took the opportunity to question the vocational expert. (Tr. 287). He does not specify what additional questions he would have asked of the vocational expert if the ALJ had submitted a formal hypothetical question during the hearing.

Cornwall is also critical of the ALJ's decision to question the vocational expert about issues of stress, problem-solving, and interacting with others when he ultimately found that none of these limitations exist. He complains that the ALJ effectively wasted government resources by having a vocational expert attend the administrative hearing. Cornwall's complaint does not warrant disturbing the Commissioner's decision. Even if it was unnecessary for the ALJ to have a vocational expert present, Cornwall demonstrates no substantial prejudice to his rights because of the vocational expert's presence. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)(court will not vacate administrative decision for procedural imperfections unless substantial rights have been

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 12**


affected).     The Commissioner's decision is supported by substantial evidence and has not been shown to be a product of legal error.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until November 15, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 13**

15, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED OCTOBER 25, 2005.

 /s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE